UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| PRESIDENT AND FELLOWS OF HARVARD COLLEGE,<br><br>            Plaintiff,<br>v.<br><br>HARVARD GRADUATE STUDENTS UNION – UNITED AUTOWORKERS, LOCAL 5118,<br><br>            Defendant. | Civil Action No.: 1:24-cv-11952 |

## COMPLAINT TO VACATE ARBITRATION AWARD

Plaintiff President and Fellows of Harvard College ("Harvard" or "the University") brings this action to vacate an arbitration award pursuant to a collective bargaining agreement ("Agreement") with Defendant Harvard Graduate Students Union – United Autoworkers, Local 5118 (the "Union"). The Union is the exclusive bargaining representative of certain graduate student workers. Article 1 of the Agreement, entitled "**RECOGNITION**," defines which individuals are in the bargaining unit and covered by the Agreement. Specifically, to be within the bargaining unit, an individual has to (1) be a student enrolled in a degree program; (2) who is "employed by" Harvard; (3) who provides "instructional services" such as by an appointment as a Research Assistant; and (4) who is not otherwise excluded from the unit, such as undergraduate students serving as research assistants.

On April 30, 2022, the Union filed a grievance pursuant to the grievance and arbitration process under the Agreement. The Union alleged that "student workers in [the] Psychology [Department] engaged in research work" were being excluded from the bargaining unit in violation of certain articles of the Agreement, including Article 1, the Recognition Clause. The Union described its grievance as "ongoing." Harvard denied the grievance, explaining that there

312591674v.2

was no contractual violation, and reserved its rights to challenge whether the grievance is procedurally and substantively arbitrable.

Ultimately, the Union took the grievance to arbitration.  At arbitration, Harvard asserted that the grievance was untimely because the Union failed to file its grievance within 30 business days of when it should have had notice of the matter, as required by the Agreement.  It also contended that the grievance was not substantively arbitrable.  As to both its claim of substantive arbitrability and on the merits, Harvard argued, *inter alia*, that the graduate students at issue were not bargaining unit members because they were not "employed by" the University.

In an interim decision, the Arbitrator addressed the issue of timeliness, concluding that "I am not persuaded that the grievance is untimely."  While the Arbitrator rejected the notion that Harvard's provision of weekly lists of individuals in the unit should have put the Union on notice months before that these graduate students had been excluded, the Arbitrator refused to determine when the Union was actually on notice and whether the grievance was filed more than 30 business days later.  The Arbitrator held "[t]o the extent there is a concern that the instant grievance was filed beyond the contractual 30 business day limit, it is unclear what 'event' would trigger that time limit."

On June 28, 2024, the Arbitrator issued a final award incorporating the interim decision and addressing Harvard's substantive arbitrability challenge and the merits of the grievance.  The Arbitrator characterized the substantive arbitrability objection as being whether the graduate students are employees of Harvard under *Columbia University*, 364 NLRB No. 90 (2016) ("*Columbia*"), which held that only those graduate students who satisfy the common law test for employment status can be within the bargaining unit and covered by the Agreement.  And while the Arbitrator stated that she "will address the University's argument," she did nothing of the

2

sort.  The Arbitrator refused to decide whether the graduate students are or were employees, claiming that this was a "settled matter" and outside her purview as a "contract arbitrator," despite that this issue is expressly encapsulated in Article 1 of the Agreement.  The Arbitrator skipped over the question of whether the students are or were "employed by" the University.  She instead proceeded to address only whether the students perform research in a lab under the supervision of a faculty member. She granted the Union's grievance and concluded that the students should be designated as within the bargaining unit.

The Award must be vacated because the Arbitrator failed to apply the contractual time limits for filing a grievance.  She also disregarded clear contractual language that only those students "employed by" Harvard can be within the bargaining unit.  The Arbitrator undisputedly skipped over this issue and in effect modified the Agreement to include non-covered students when she had no power to do so.  Consequently, the Award does not draw its essence from the Agreement, and the Arbitrator exceeded her authority.

Further, the Award violates a clear and well-defined public policy that only individuals who are "employees" within the meaning of the National Labor Relations Act ("NLRA") have the right to unionize and be in a bargaining unit.  *See* 29 U.S.C. §§ 152(3), 157, 159.  In *Columbia*, the National Labor Relations Board ("NLRB") held that graduate students who meet the common law definition of an employee can unionize but students who do not meet that definition cannot be in a bargaining unit.  The Arbitrator disregarded the students' employment status, and the Award's inclusion of these students in the bargaining unit nonetheless violates the established public policy that only "employees" may unionize.

For these reasons and those set forth below, the Award should be vacated.

312591674v.2

1. This complaint is brought under Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, to vacate the Arbitrator's Decision and Award and the Timeliness Decision. A true and accurate copy of the Arbitrator's Timeliness Decision is attached as **Exhibit 1**.[1] A true and correct copy of the Arbitrator's Decision and Award, dated June 28, 2024, is attached as **Exhibit 2**. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 and 29 U.S.C. § 185. Venue is proper under 29 U.S.C. § 185 and 28 U.S.C. § 1391.

## Facts

### The Parties

2. Harvard is a co-educational, private research institution of higher education located in Cambridge, Massachusetts. The University is dedicated to advancing knowledge and educating students across the spectrum of arts, sciences, law and medicine. It consists of the undergraduate Harvard College, twelve graduate and professional schools, and the Radcliffe Institute for Advanced Studies. Harvard enrolls more than 15,000 graduate students each year.

3. Harvard's Kenneth C. Griffin Graduate School of Arts and Sciences ("GSAS") is a leading institution of graduate study, which offers Ph.D. and select master degree programs in the arts, sciences and humanities.

4. The Department of Psychology maintains one of the world's leading psychology graduate programs. The Department is housed in GSAS and confers master and doctorate level degrees.

5. In 2016, the NLRB issued its decision in *Columbia*, in which it held that "student assistants who have a common-law employment relationship with their university are statutory employees under the [NLRA]." *See Trustees of Columbia University*, 364 NLRB No. 90 (Aug. 23, 2016). The NLRB explained that to meet the common law test for employment status, the

---

[1] Harvard has redacted the names of students in the attached exhibits to protect their privacy.

4

312591674v.2

student must provide services to the university in exchange for compensation. However, the NLRB made clear that students who receive funds in order to pursue their own academic goals are neither common law employees nor employees under the NLRA and therefore they may not unionize.

6. The Union is an unincorporated association and a "labor organization" as defined by 29 U.S.C. § 152(5). According to its bylaws, its members consist of "all graduate students at Harvard University enrolled in programs with teaching or research work requirements" and it "can only bargain for workers in a recognized bargaining unit."

7. In October 2016, shortly after the issuance of *Columbia*, the Union filed a petition with the NLRB, Case No. 01-RC-186442 to become the exclusive bargaining representative of graduate student workers at Harvard. Harvard and the Union entered into a stipulated election agreement in which they agreed to an election in the following unit: "all students enrolled in Harvard degree programs employed by the Employer who provide instructional services at Harvard University, including", *inter alia*, "all students . . . employed by the Employer who serve as Research Assistants." The voting unit excluded, among others, undergraduate students serving as research assistants.

8. After an election, the Union was certified as the bargaining representative of this unit.

## The Collective Bargaining Agreement

9. The University and the Union are parties to the Agreement, which is effective from November 27, 2021 through June 30, 2025. A copy of the Agreement is attached as **Exhibit 3**.

10. Article 1 of the Agreement, entitled **RECOGNITION**, states as follows:

As reflected in the National Labor Relations Board Case 01-RC-186442, the

5

University recognizes the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America (UAW), and its Local Union, Harvard Graduate Students Union-UAW Local 5118 (HGSU-UAW Local 5118), as the exclusive bargaining representative for employees in the bargaining unit. The bargaining unit shall include all students enrolled in Harvard degree programs employed by Harvard University who provide instructional services at Harvard University, including graduate and undergraduate Teaching Fellows (teaching assistants, teaching fellows, course assistants) and all students enrolled in Harvard degree programs (other than undergraduate students at Harvard College) employed by Harvard University who serve as Research Assistants (regardless of funding sources, including those compensated through Training Grants). This bargaining unit includes students employed by Harvard University and enrolled in the Harvard Graduate School of Arts and Sciences, Harvard Business School, the Division of Continuing Education, Harvard Graduate School of Design, Harvard Graduate School of Education, the Harvard John A. Paulson School of Engineering and Applied Sciences, the John F. Kennedy School of Government at Harvard University, Harvard Law School, Harvard Divinity School, Harvard Medical School, the Harvard T.H. Chan School of Public Health, and Harvard College. Excluded: All undergraduate students serving as research assistants and all other employees, guards and supervisors as defined in the Act.

11. Article 2 of the Agreement refers to individuals in the bargaining unit as "Student Workers" and states that "all Student Workers (SW) performing duties below shall be placed into titles and pay classifications based on the nature of duties and eligibility." As is relevant to this case, a Research Assistant 1 performs the following duties: "[p]erforms research (including scientific rotations) under the supervision of faculty/ principal investigator/ museum curator."

12. Article 3 requires Harvard to provide "an employment appointment letter" to a Student Worker ("SW"), which must include, among other things, the faculty member(s) or the supervisor(s) to whom the SW will report, the work location, the expected work schedule, and a statement that the position is covered by the Agreement with a link thereto. For research appointments, the letter must include "a brief description of the required research or lab duties."

13. The Agreement contains a grievance and arbitration provision. Article 6, Section 1 states that "[a] grievance is any dispute concerning the interpretation, the application or

claimed violation(s) of a specific(s) of this Agreement." That section explains that "A SW, a group of SWs or the Union" may process a grievance pursuant to Article 6.

14. The grievance procedure in the Agreement provides for various steps, culminating in arbitration. Article 6, Section 3 states that "any formal grievance must be filed at Step One of this Article within thirty (30) business days after the event, or after the grievant should have become aware of the event."

15. Section 5 of Article 6, entitled Time Limits, states that "[a]bsent extraordinary circumstances, failure by the SW, group of SW's or the Union to comply with the time limitations of this Article at any of the Steps, including the initial filing of the grievance, shall constitute a forfeiture of the right to pursue the grievance and shall preclude further processing of the grievance."

16. Article 6, Section 4(E) of the Agreement states that "[t]he Arbitrator shall have no power to add to, subtract from, modify or disregard any of the provisions of this Agreement. . . ."

17. Article 6 Section 4(E) further precludes the Arbitrator from "changing, modifying, or restricting any action taken by the University on matters reserved to the University's discretion as per Article 17 (Management Rights) unless those actions are restricted by other terms of this Agreement." Article 17 states in relevant part that "questions of academic judgment and decision-making," including "student admissions" and academic standards, including student's progress, "remain in the University's sole discretion."

18. Consistently, Article 16 reiterates the University's right to "define academic expectations and degree requirements," and explains, among things, "[t]he time spent by a student worker on their academic efforts associated with degree requirements and academic expectations are not part of this collective bargaining agreement." It further recognizes that

7

"research that will contribute to degree requirements . . . are academic efforts that are not part of this collective bargaining agreement."

19. Article 18 requires Harvard to provide the Union with weekly lists of each SW in the bargaining unit.

20. Article 20 relates to compensation for SWs. As to Research Assistant 1s, the Agreement provides for an annual stipend. The Agreement explains that "[t]he parties understand the work of a Research Assistant is a blend of academic and employment endeavors and that clear separation of each is difficult." Accordingly, "[t]he stipend . . . could be characterized as financial assistance or compensation or both" and thus "is the functional equivalent of a salary."

## Psychology Ph.D. Students

21. There are approximately 75 graduate students enrolled in the Psychology Department's graduate program.

22. When a prospective student is offered admission into a graduate degree program in Psychology, the offer includes a financial support package. That package includes fully paid tuition and an unencumbered stipend to perform their own research for several years, as described below. A true and correct copy of a Psychology Department graduate program acceptance letter and notice of financial support, dated April 15, 2021, is attached as **Exhibit 4**.

23. During the first and second years of their degree program, Psychology graduate students receive a stipend to cover their living expenses. This stipend is funded by a GSAS fellowship, is issued outside of the University payroll system, and is not contingent upon the student providing services to the University, such as through an appointment as a Research Assistant. During these first two years, these students focus on completing academic courses. However, these students also perform their own research, as they are required under their degree

8

program to perform a First Year Project and a Second Year Project with guidance from a faculty mentor. These projects are the student's first forays into research, and these academic requirements are to aid them in becoming first-class researchers. A true and correct copy of a document reflecting the Psychology Graduate Program requirements is attached as **Exhibit 5**.

24. The student's First and Second Year Projects allow the faculty to evaluate the student's preparedness to enter the dissertation state of the program. Ph.D. candidates are required to successfully complete a dissertation in order to qualify for degree conferral. In the Psychology Department, a student's dissertation can take two forms: a traditional format consisting of a 150 to 200 page report describing the student's dissertation research question, method of investigation and results or a three paper format in which the student prepares three empirical papers based on their own research.

25. In the students' third and fourth years, Harvard provides stipend funding in exchange for service to the University. Service can take one of two forms: Teaching fellowships in which the graduate student teaches two sections of a course or a Research Assistantship whereby the student assists a faculty member on that faculty member's research. These students are employed by Harvard, are paid through payroll and have been considered by Harvard to be in the bargaining unit. Historically, about 35 graduates students in the Psychology Department have been in the bargaining unit.

26. Consistent with the Agreement, students who accept appointments as a Teaching Fellow or Research Assistant receive a formal letter of appointment that contains information regarding their job duties, expected work schedule, compensation and membership in the bargaining unit. A true and correct copy of an email chain beginning on June 4, 2021 confirming appointment as a Teaching Fellow in Psychology is attached as **Exhibit 6**. A true and correct of

an email confirming appointment as a Research Assistant in Psychology, dated August 12, 2021, is attached as **Exhibit 7**.

27. Students in their third or fourth years are not required to accept an appointment as a Teaching Fellow or Research Assistant. Students who are "self-funded" or have other sources of income can choose to focus on academic requirements, including their own research.

28. In their final year of the program, students receive a Dissertation Completion Fellowship ("DCF"), a stipend provided by Harvard, so that they can focus on completing their dissertation. This stipend is not contingent on the student providing services to the University. In fact, the students are not permitted to engage in any work for the University while receiving this stipend. At the arbitration hearing, the Union conceded that students on a DCF are not within the bargaining unit, but the Arbitrator never accounted for that in her Decision and Award.

## Harvard Provides to the Union Lists of SWs in the Bargaining Unit

29. Commencing on September 10, 2020, the University began providing on a weekly basis a list of SWs to the Union pursuant to Article 18 of the Agreement.

30. As found by the Arbitrator, although there were generally 75-80 graduate students enrolled in the Psychology Department, the weekly lists provided to the Union identified approximately 35 of those students as SWs in the bargaining unit.

31. In December 2020 and in June 2021, the Union filed grievances that graduate students in departments other than Psychology "engaged in teaching and instructional work" were left off the lists. As to the June 2021 grievance, a different arbitrator concluded that the grievance was untimely because the students had been left off the weekly lists since November 2020. A true and correct copy of this award, referred hereafter as the Shrage Award, is attached hereto at **Exhibit 8**.

312591674v.2

32. On February 7, 2022, the Union filed a grievance on behalf of a student in the Psychology Department because he did not receive a letter of appointment as a Research Assistant in the bargaining unit (hereinafter "the February 7, 2022 Grievance"). The February 7, 2022 Grievance identified January 28, 2022 as the date of violation. Harvard did not consider the student within the bargaining unit because he had funding through an outside grant and was not employed by the University. Ultimately, the Union did not take that grievance to arbitration.

### The Grievance Underlying the Arbitration

33. On April 30, 2022 the Union filed the grievance underlying the Arbitration. It alleged that "[s]tarting in the spring term of 2022, the Union noticed that the student workers in Psychology engaged in research work were left off the weekly bargaining lists" and "it is reasonable to conclude that the University has decided to exclude these student workers from the bargaining unit, violating Article 1, 2, 3 and any and all Articles protections, representation, compensation and benefits these workers are or have been deprived of by being removed from the bargaining unit." As to the date of the alleged violation, the Union claimed it was "ongoing" but "first noticed around 3/24/2022".

34. The University denied the grievance. It advised the Union that it reserved the right to assert any defenses as to whether "the grievance is procedurally and/or substantively grievable and/or arbitrable."

35. The Union took the grievance to arbitration.

### The Arbitration and the Awards

36. The Arbitrator was selected, and she held a hearing on the grievance over four days.

37. The parties did not agree as to the issues to be decided by the Arbitrator. Harvard proposed the following formulation of the issues:

11

> Is the grievance arbitrable?
> If so, was the grievance timely filed?
> If the grievance was timely filed, did the University violate the CBA when it classified the grievants as non-Union students?
> If so, what shall be the remedy?

The Union proposed the issue as follows:

> Did the University violate the CBA by failing to classify psychology PhD students conducting research as Research Assistants under Article 1 and/or as Research Assistant 1 under Article 2?
> If so, what shall be the remedy?

The Arbitrator decided to define the issues requiring resolution as:

> Is the grievance timely filed?
>
> If so, did the University violate the CBA by failing to classify psychology PhD students conducting research as Research Assistants under Article 1 and/or as Research Assistant 1 under Article 2?
> If so, what shall be the remedy?

Notwithstanding her framing of the issue, the Arbitrator acknowledged that "[t]he University's arbitrability challenge is two-pronged: That the Grievance is not substantively arbitrable and, even if it is a proper matter for arbitration, it is procedurally inarbitrable, as the grievance was not timely filed."

38. The parties did not agree to bifurcate the case between arbitrability and the merits.

### The Timeliness Decision

39. On May 20, 2024, the Arbitrator issued the Timeliness Decision, concluding that the grievance was timely.

40. As set forth in that decision, the Arbitrator elected to decide the question of whether the grievance was timely before deciding whether the grievance was substantively arbitrable.

41. The Arbitrator concluded that the weekly lists in the Fall of 2020 were insufficient to put the Union "on clear notice" that PhD students in Psychology were excluded

from the bargaining unit and thus the Union was not obligated to file a grievance in the Fall of 2020. The Arbitrator illogically stated that the inclusion of some PhD students in Psychology on the November 2020 list undercut the University's claim that other students in that department were not considered to be in the bargaining unit.

42. Without addressing when the 30-business day time period for filing a grievance was triggered, the Arbitrator concluded that the "extraordinary circumstances" language in Article 6, Section 5 was applicable to the Union's failure to understand from the lists that some Psychology students were excluded. The Arbitrator did not articulate any factors that she considered in determining whether the circumstances were "extraordinary." She stated only that "[r]eviewing and attempting to verify the many lines of spreadsheet material . . . was a complicated task" and the "Union also needed to determine which individuals/types of students were not listed."

43. Again without specifying when the 30-business day period actually started, the Arbitrator explained that when the Union researched the situation underlying the February 7, 2022 Grievance, there was a "realization that there were a number of other similarly situated Psychology PhD students."

44. The Arbitrator distinguished the Shrage Award in which another arbitrator found the Union's grievance to be untimely. In that case, the arbitrator found that the weekly lists did in fact put the Union on notice that some students were omitted and that the "extraordinary circumstances" language did not apply. Here, the Arbitrator wrote that unlike in the Shrage Award, "there was no deletion of students from early lists that would alert the Union to a bargaining unit status dispute."

312591674v.2

45. The Arbitrator concluded that "it is unclear what 'event' would trigger [the 30-business day] time limit."

46. The Arbitrator's determination that the grievance is timely does not draw its essence from the collective bargaining agreement. There is no dispute that the weekly lists in the Fall of 2020 did not include the Ph.D. students in Psychology who are the subject of the grievance. Even if the size and "complexity" of analyzing the list was an exceptional circumstance (despite not being so in the Shrage Award), the Arbitrator failed to address whether the grievance was nonetheless untimely. She concedes that the Union knew on or before the filing of the February 7, 2022 Grievance that a group of students in the Psychology Department were not included in the unit. Its filing of the grievance on April 30, 2022 was necessarily outside of the 30-business day period. The Arbitrator disregarded this issue, claiming that it was unclear what triggered the 30-business day period.

## The Decision and Award

47. On June 28, 2024, the Arbitrator issued the Decision and Award.

48. The Arbitrator explained that when applying to a graduate degree program in the Psychology Department, candidates will seek to work with a faculty member and a related lab that aligns with their research interests.

49. The Arbitrator found that first and second year graduate Psychology students receive a stipend. She found that "[g]enerally, required courses are a focus of a student's first and second years." As to the First Year Project, the Arbitrator recognized this as an academic requirement and that a faculty member helps the student develop a research idea and guides them through the project process. First year students are advised that they are to pursue their education and research ideas, not to perform the work of faculty. The Arbitrator also found that

students are expected to develop a more accomplished scientific product as the Second Year Project.

50. The Arbitrator also found that during years three and four, graduate students are compensated through teaching fellowships or appointments as Research Assistants.

51. The Arbitrator found that students in their final year receive a DCF, "a stipend similar to that is received in years one and two."

52. In the Decision and Award, the Arbitrator acknowledged that the University's position was that "the clear and unambiguous language of the Recognition Clause . . . requires that graduate students 'be employed' by Harvard . . . [and that t]he purported grievants do not meet the common law test for statutory employment status set out in *Columbia*." The Arbitrator understood that Harvard contended that "[t]he students at issue do not perform services to the University as a condition of receiving their funding" and that the stipends provided in the first, second and final years of the program are "no-strings educational grants."

53. After describing her role as interpreting and applying the provisions of the negotiated agreement, the Arbitrator refused to consider whether the students at issue are employed by Harvard. Ignoring the language of Article 1 altogether, the Arbitrator "disagree[d]" with the University's contention that she had to decide whether the students were employees under *Columbia*. According to the Arbitrator, the parties had addressed the contours of the unit in the proceeding before the NLRB and bargaining. Characterizing the issue as "settled matters," the Arbitrator wrote, "[a]s a contract arbitrator, I will not revisit or disturb those agreements."

54. The Arbitrator thus considered and decided only whether students are conducting research as Research Assistants, skipping over the Agreement's requirement that the graduate

15

students also be "employed by" Harvard. She found that the excluded graduate students "perform research under the supervision of a faculty member/ [principal investigator]."

55. Citing to Article 20, which relates to treating the stipend as a salary, the Arbitrator explained that the parties have recognized that the work of a Research Assistant is a "blend of academic and employment endeavors" and that clear separation is difficult.

56. Finally, Harvard had argued that under the terms of their visas, international students are prohibited from working for more than 20 hours and that the inclusion of individuals who receive a stipend but are not required to serve as Research Assistants or Teaching Fellows puts their immigration status at risk if research as part of their academic pursuits is treated as "work" for the University. The Arbitrator rejected this argument.

57. The Arbitrator concluded that all Psychology graduate students should be included in the bargaining unit. Although the Union had conceded at the hearing that the students on a DCF should not be included, the Arbitrator did not exclude them from her award.

58. The Decision and Award does not draw its essence from the Agreement. Article 1 of the Agreement makes clear that only those students who are "employed by" Harvard are within the bargaining unit. This language is based on the NLRB's decision in *Columbia* because only "employees" have the right to organize under the NLRA. The Arbitrator refused to consider this issue either as matter of substantive arbitrability or as a matter of contract.

### Count 1

59. Paragraphs 1 through 61 are incorporated by reference as if fully set forth herein.

60. In concluding that the grievance is timely, the Arbitrator disregarded the Agreement's requirement that all grievances must be filed within 30 business days. Although the Arbitrator believed that exceptional circumstances applied to the Union's failure to understand from the weekly lists that certain Psychology graduate students were not included in

the bargaining unit, the Arbitrator failed to find when the 30-business day period actually started and whether the Union timely filed the grievance thereafter.

61. The Arbitrator refused to consider whether the students at issue are or were "employed by" Harvard, despite language in Article 1 of the Agreement that requires that consideration. As a matter of substantive arbitrability and contract, only those students employed by Harvard can be in the bargaining unit.

62. The Timeliness Decision and the Decision and Award do not draw their essence from the Agreement.

63. In issuing the Timeliness Decision and the Decision and Award, the arbitrator exceeded her authority as she was not permitted to disregard express language in the Agreement.

**Count 2**

64. Paragraphs 1 through 66 are incorporated by reference as if fully set forth herein.

65. There is a dominant and well-established public policy, as evidenced by the NLRA, that only employees are permitted to unionize and engage in collective bargaining.

66. In *Columbia*, the NLRB determined that graduate students may unionize if they are employed by their university, meaning that they provide a service to the university in exchange for compensation.

67. The Arbitrator's Decision and Award violates this public policy by allowing non-employees to be included in the bargaining unit, despite that the unit certified by the NLRB (and recognized in Article 1) only includes graduate students employed by Harvard.

**Prayer for Relief**

Plaintiff President and Fellows of Harvard College requests that this Court enter judgment vacating the Timeliness Decision and the Award and Decision issued by the Arbitrator, and grant all other relief deemed appropriate by this Court.

312591674v.2

Dated: July 29, 2024

                                      Respectfully Submitted,

                                      President and Fellows of Harvard College

                                      By its counsel:

                                      */s/ Robert A. Fisher*
                                      Robert A. Fisher (BBO # 643797)
                                      Abigail D. Skinner (BBO # 709705)
                                      rfisher@seyfarth.com
                                      askinner@seyfarth.com
                                      SEYFARTH SHAW LLP
                                      Two Seaport Lane, Suite 1200
                                      Boston, MA 02210-2028
                                      Telephone:  (617) 946-4800
                                      Facsimile:   (617) 946-4801