**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| PRESIDENT AND FELLOWS OF HARVARD COLLEGE,<br><br>Plaintiff,<br><br>v.<br><br>HARVARD GRADUATE STUDENTS UNION – UNITED AUTOWORKERS, LOCAL 5118,<br><br>Defendant. | Civil Action No. 1:24-cv-11952 |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT AND REPLY MEMORANDUM IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

The Court should deny Defendant Harvard Graduate Students Union – United Autoworkers, Local 5118's ("the Union") Cross-Motion for Summary Judgment and grant Plaintiff President and Fellows of Harvard College's ("Harvard" or the "University") Motion for Summary Judgment.

In its Opposition, the Union throws adverbs and adjectives at Harvard's arguments, but all of its bluster is intended to mask the significant flaws in what the Arbitrator did. Stripped of hyperbole, the Union cannot get around one key fact: the Arbitrator disregarded whether the disputed Ph.D. students in Psychology are "employed by" Harvard. The Union concedes that this question was for the National Labor Relations Board and not the Arbitrator to decide. And while this admission means that the Arbitrator should have denied the grievance as substantively not arbitrable, the Union nonetheless asserts that the Arbitrator was free to charge ahead and order Harvard to extend the collective bargaining agreement to these non-employee students.

1

Boiled down to its essence, the Union's defense of the Arbitrator's Merits Decision is premised on two equally flawed but related points: (1) the Arbitrator was free to decide that the disputed graduate students fell within the language of Article 2, regardless of whether they satisfied the language of Article 1, and (2) although the Arbitrator was not permitted to decide whether the students were "employed by" Harvard, she could disregard that requirement of Article 1 and extend the collective bargaining agreement ("CBA") to non-employees. The illogic of the Union's position is evident. The Arbitrator was not free to disregard the express language of Article 1 that only those students "employed by" Harvard are in the bargaining unit represented by the Union and subject to the contract. The Union's implicit concession that the disputed Ph.D. students are not employees necessarily means that the Arbitrator exceeded her authority.

## I.     The Union Concedes that the Arbitrator Exceeded Her Authority.

In a single phrase in its Opposition, the Union concedes, as it must, that the Arbitrator had no authority to decide the statutory question of whether the disputed Psychology Ph.D. students were "employees" as defined in the National Labor Relations Act.[1]  *See* Opposition, pp. 15-16; *see also* 29 U.S.C. § 152(3). This admission means that the Arbitrator should have denied the grievance as not arbitrable. If first and second year Psychology Ph.D. students and those on a dissertation completion fellowship ("DCF") are not employees, then the Union does not represent them, they are not covered by the CBA, and the Arbitrator had no authority to extend the CBA to them. As the employment status of these graduate students was the threshold issue, the Union's recourse was to file a unit clarification petition with the National Labor Relations Board.

---

[1] The Union's concession is easily overlooked. In the guise of attacking Harvard's argument, the Union acknowledged that it "shared" the same position.  *See* Opposition, pp. 15-16.

In an effort to gloss over its admission in this regard, the Union misrepresents Harvard's arguments and manufactures a straw man. Contrary to the Union's assertions, the University does not contend that the Arbitrator had jurisdiction only if she first addressed the threshold issue of whether the disputed students were employees under the NLRA. *See* Opposition, p. 15. Harvard's stance is simple: the Arbitrator lacked authority to determine employee status under the NLRA, and thus lacked authority to issue the Award extending the CBA to these Psychology students. In attempting to re-frame Harvard's argument as something it is not, the Union mashes this argument with Harvard's argument in the alternative: If the Court were to conclude that the inclusion of the "employed by" language in Article 1 meant that the Arbitrator could decide that issue as a matter of contract, the Arbitrator was then required to do so.

These are alternative, independent arguments. Either way, the bottom line is the same: The Arbitrator lacked the authority to act as she did. If she lacked authority to decide whether the disputed Ph.D. students in Psychology are employed by Harvard, then she lacked authority to decide the grievance. Alternatively, if she was permitted to interpret the "employed by" language in Article 1, then her refusal to do so, meant she ignored the plain language of the parties' CBA. *Hoteles Condado Beach v. Union DeTronquistas, Local 901*, 763 F.2d 34, 42 (1st Cir. 1985) (arbitrator exceeded authority when he "ignored the clear language of the contract," explaining that arbitrators are "without authority to disregard or modify plain and unambiguous provisions") (citing *Detroit Coil Company v. Int'l Ass'n of Machinists & Aerospace Workers*, *Lodge No. 82*, 594 F.2d 575, 579 (6th Cir.1985)) The Union's feigned confusion about Harvard's arguments in this regard is nothing more than an attempt to distract the Court from the significant flaws in what the Arbitrator did.

**II.     The Union's Attempt to Justify the Arbitrator's Decision Defies Logic.**

The Union's attempt to justify the Arbitrator's decision on the merits establishes that the Award cannot be enforced. The Union does not contend (nor could it) that the Arbitrator interpreted the "employed by" language in Article 1 and made a determination that the disputed Psychology Ph.D. students are employees covered by the Recognition Clause.[2] Instead, the Union effectively contends that the Arbitrator was free to skip over the language of Article 1 and instead focus solely on whether the students fell within the job classification of Research Assistant set out in Article 2. In its Opposition, the Union argues that the Arbitrator was free to decide whether the graduate students "met the definition of research assistants under Articles 1 *and/or* 2." Opposition p. 3 (emphasis added). The Union's use of the phrase "and/or" is telling. The Union concedes that the Arbitrator lacked authority to decide whether the students are employees, and its use of the conjunction "or" means the Union contends that the Arbitrator could conclude that a student falls within Article 2 without ever determining whether they are appropriately within the bargaining unit definition in Article 1.

Such a result is not an "interpretation" of the contract; it is a wholesale repudiation of the language in Article 1. *See PowerShare, Inc. v. Syntel, Inc*., 597 F.3d 10, 17 (1st Cir. 2010) (court was obligated to give preference to arbitrator's interpretation that "makes sense of the Agreement as a whole," rather than an interpretation that placed one provision at "cross purposes" with another); *Mastrobuono v. Shearson Lehman Hutton, Inc*., 514 U.S. 52, 63 (1995) (stating that it is a "cardinal principle of contract construction[ ] that a document should be read to give effect to all its provisions and to render them consistent with each other"). Article 1 and Article 2 are not

---

[2] The Union claims that Arbitrator "acknowledged and interpreted" the language of both Articles 1 and 2, *see* Opposition, p. 17. While the Arbitrator undisputedly applied Article 2, she never interpreted and applied Article 1, except to say that she would not decide whether the students were employees. The Union cites nothing in the Merits Award to support its assertion, presumably because it does not exist.

alternative provisions regarding who is covered by the CBA and represented by the Union. Article 1 recognizes the Union as the exclusive bargaining representative of individuals in the bargaining unit and defines which students fall within that bargaining unit. Included in that language is a requirement that the graduate student be "employed by" Harvard. Article 1 makes clear that individuals who do not fall within the scope of the bargaining unit are not represented by the Union and are excluded. Article 2 describes the titles and classifications to be applied to those employees in the bargaining unit, referred to as "Student Workers." Put differently, Article 2 only applies if students are within the bargaining unit as defined by Article 1. In claiming otherwise, the Arbitrator disregarded the plain language of the Agreement.[3]

The cases relied upon by the Union undercut what the Arbitrator did here. Requiring the Arbitrator to ensure that bargaining unit members are employees when the contract requires that members be "employed by" the University is hardly the type of "linguistic microsurgery" that the Court in *Teamsters Local Union No. 42 v. Supervalu, Inc.*, 212 F.3d 59, 67 (1st Cir. 2000) sought to avoid. There, the Court determined that the arbitrator's interpretation of a wage provision was plausible. *Supervalu, Inc.*, 212 F.3d at 68. Critically, the Court explained that the arbitrator in that case "did not "ignore the plain language of the contract.'" *Id*. at 66 (quoting *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 36 (1987)). Similarly, in *Twin River-Tiverton, LLC v.*

---

[3] This distinction is both practical and legal. As the Arbitrator recognized, Psychology Ph.D. students perform research in a lab under the guidance of a faculty member in order to pursue their own academic objectives. First and second-year students are expected to perform an academic research project, and those on a DCF are focused on completing their dissertation in order to earn their degree. They are not "employed by" Harvard; they are students meeting the academic requirements of their degree program. Even as to those Ph.D. students who are undisputedly "employed by" Harvard, the CBA differentiates between their academic work, which is not "work" for Harvard, and their appointments as Student Workers. *See* CBA, Art. 16, Sec. 1.

*United Auto Workers, Local #7770*, at *6 (D.R.I. Nov. 30, 2020), the district court decided that the arbitrator's "interpretation" of the contract was plausible and did not ignore the plain language.

Contrary to both of those cases, the Arbitrator here did not simply interpret the language before her. She ignored the language of Article 1 altogether and completely disregarded the question of whether the disputed Ph.D. graduate students are "employed by" Harvard. This is not and cannot be labeled as an interpretation, and therefore her Award could not have drawn its essence from the contract. *United Steelworkers v. Enter. Wheel & Car Corp.*, 363 U.S. 593, 597 (1960).

### III.     The University Did Not Agree to Include Non-Employees In the Bargaining Unit.

Because the contractual language is against it, the Union makes a second but related argument in defense of the Award: that in applying Article 2, the Arbitrator was free to extend the CBA to non-employees. Again, the Union is cagey on this point, but it makes oblique references to the inclusion of non-employees in its brief. *See, e.g.*, Opposition, pp. 17 n.10, 20. Regardless, the Arbitrator had no authority to extend the parties' CBA to non-employee students in the Psychology Department.

First, Article 1 expressly requires a student to be employed by Harvard to be in the bargaining unit. Regardless of whether this is a reference to a statutory requirement under the NLRA, an independent contractual requirement or both, the Arbitrator was not free to leapfrog over the issue and then proceed to apply the CBA to these students. If they are not "employed by" Harvard, then they are not covered by the CBA. In a single sentence, the Union half-heartedly wrote that "employed by" is not plain and unambiguous, *see* Opposition, p. 17, but, apparently recognizing the absurdity of such an argument, the Union does not try to claim that "employed by" can be interpreted to include those who are not employed by Harvard.

6

Second, the Union argues that an employer and a union can enter into a voluntary agreement to include individuals who are not "employees" under the NLRA within a bargaining unit. But this fails out of the gate. Contrary to the Union's spin, the Arbitrator did not find that there was some enforceable agreement between the parties to extend the collective bargaining agreement to first and second year Psychology Ph.D. students or those on a DCF. To the contrary, the Arbitrator's focus was on the inclusion in the bargaining unit of *other* graduate students elsewhere. Not only does this focus establish that there was no agreement as to the disputed Psychology Ph.D. students, the entirety of the Arbitrator's argument appears to be her belief that it is "incongruous" that Harvard and the Union have agreed to include other graduate students in the unit but not these. *Compare* Merits Decision, pp. 31-33.

To the extent that the Union contends that the Arbitrator was free to make this comparison, she was not. As a self-described "contract arbitrator," the Arbitrator was responsible for interpreting the contract. There admittedly was no agreement between Harvard and the Union to extend the CBA to non-employee Ph.D. students in Psychology. As such, her belief as to what seems logical is not an interpretation of an agreement between the Union and Harvard. Rather, she improperly dispensed her own brand of industrial justice which she was not allowed to do. *Georgia-Pac. Corp. v. Local 27, United Paperworkers Int'l Union*, 864 F.2d 940, 944 (1st Cir. 1988). The Arbitrator had no authority to extend the unit to individuals whom the University never consented to include.

**IV.    The Award Violates Public Policy.**

The Union's contention that the Award does not violate public policy fails for the same reasons. Harvard does not dispute that courts and the NLRB have allowed parties to reach

voluntary agreements regarding the scope of a bargaining unit. But again, there is no such agreement here as to the students in question.

The Union's further claim that the NLRB does not "prohibit employees from being included in a unit without a vote," *see* Opposition, p. 20, ignores the law and the facts here. As Harvard explained in its principal brief, a union can file a unit clarification petition with the NLRB if it believes a group of employees should be added to an existing unit. The NLRB's decision in *NV Energy, Inc.*, 362 NLRB 14 (2015), cited by the Union, demonstrates that the NLRB will look closely at the facts to assess whether it is appropriate or not to include the disputed employees in the existing unit. The Union never filed such a petition here, and of course, the fundamental issue is whether these graduate students are employees at all.

To circumvent these problems, the Union contends that the NLRB permits arbitrators to extend a collective bargaining agreement to non-employees in the absence of an agreement, as was done here. Not one of the cases cited by the Union supports that premise. In *Apollo Systems, Inc.*, 360 NLRB 687, 688 (2014), a unit clarification petition had been filed. The NLRB deferred that petition to arbitration because there *was* a voluntary agreement between the employer and the union. 360 NLRB at 688. But as the NLRB explained in that case, it retained its right to decide issues of statutory policy, and deferral meant that the Board retained the right to review the resulting award after-the-fact. *Id*.

The NLRB's decision in *St. Mary's Medical Center*, 322 NLRB 954 (1997) makes this clear. In that case, a Regional Director of the NLRB deferred to an arbitrator whether a new position fell within a contractual exclusion from the recognition clause for positions requiring 600 hours of training. *Id*. at 954. Although the arbitrator decided this limited, contractual question, the Regional Director retained the right to decide the statutory question of whether this new

8

position should be included in the existing unit, and the NLRB agreed that this determination was not for an arbitrator.[4]  *Id*.

Together, these cases establish that the NLRB decides if and under what circumstances it will defer to an arbitrator in a unit clarification proceeding and whether or not individuals should be added to an existing unit.  And the cases cited by Harvard in its principal brief establish that the NLRB will decide through the representation process whether graduate students like those at issue here are employees under the Act.[5]  Thus, contrary to the Union's arguments, the NLRB determines for itself whether or not individuals are employees under the Act and whether or not they can be added to an existing unit without an election.  None of the cases cited by the Union authorizes what the Arbitrator did here.

## V.     This Court Has Jurisdiction Over This Case.

In a final effort to avoid this Court's review of the Arbitrator's flawed decision, the Union contends that the NLRB's jurisdiction over representation issues strips this Court of jurisdiction. It does not.  Harvard is not asking the Court to decide a representational issue.  It properly asks the Court to vacate an arbitration award that conflicts with the essence and language of the contract, as well as public policy.  It is well established the Court has jurisdiction over such issues. *Int'l Bhd. Of Firemen & Oilers, Local 261 v. Great N. Paper Co.*, 765 F.2d 295, 296 (1st Cir. 1985).

## VI.    The Arbitrator's Conclusion That The Grievance Was Timely.

---

[4] The Union's citation to *Hotel & Restaurant Employees, Local 274*, 282 NLRB 939 (1987) is inapposite.  That case involved the commission of unlawful picketing by the union in order to force an employer to recognize and bargain with it.  The NLRB found that the Union's assertion of its legal claim that a collective bargaining agreement applied to the employer was not an independent unfair labor practice.  282 NLRB at 940.

[5] After Harvard filed its brief, the NLRB published the decision of a Regional Director regarding Brown University. In that decision, the Regional Director concluded that certain post-doctoral fellows were not "employees" under the Act. *Brown University*, Case No. 01-RC-338737 (December 20, 2024).

The Arbitrator's conclusion that the grievance was timely must be vacated. In its Opposition, the Union again engages in a straw man. It argues that questions of procedural arbitrability are for the arbitrator, not the Court. Opposition, p. 18. But Harvard is not claiming that the Arbitrator was forbidden to decide the issue. Rather, its argument is that the Arbitrator's Timeliness Decision does not draw it essence from the contract.

The Union offers little response to Harvard's argument. It recites the contractual language and then offers merely a conclusory sentence that Harvard provides no case law to disturb the Arbitrator's conclusion. *See* Opposition, p. 18. It relegates any substantive response to two footnotes. As to Harvard's argument that the factual findings of the Arbitrator demonstrate the grievance is untimely, the Union offers no response on the merits. *See* Opposition, p. 18 n.11. Instead, it argues that Harvard never raised the argument. This is simply incorrect. Harvard's position before the Arbitrator was that the grievance was years too late. The Arbitrator rejected this, but her factual findings demonstrate that the grievance was weeks too late. Harvard's failure to predict the illogic of the Arbitrator's reasoning does not mean that it failed to argue that the grievance was untimely.

In footnote 12, the Union misrepresents Harvard's argument. The Arbitrator applied the "extraordinary circumstances" language to the Union's review of the lists back in 2020 to suggest that the Union was not on notice. But by its terms, that exception to the contract's timeliness requirements can only be utilized when the Union's grievance is otherwise untimely. Regardless, the Arbitrator agreed that the Union was on notice of the grievance underlying this case in connection with its February 7, 2022 grievance. The Arbitrator did not claim that "extraordinary circumstances" applied in that instance. Thus, the Union's failure to timely file the grievance in

this case thereafter means that the Arbitrator's conclusion that the grievance is procedurally arbitrable cannot stand.

**VII.    Harvard Appropriately Cited to the Record Before the Arbitrator.**

The Union's contention that the University seeks to have the Court revisit the Arbitrator's factual findings and that the relevant facts are limited to those within the Awards is without merit. The University cited to portions of the underlying record relied upon by the Arbitrator to provide relevant context to the Court for the Arbitrator's factual findings, not to challenge them. The law is well-established that this is permissible and the Court may properly consider the evidence underlying the Arbitrator's findings. S*ee JCI Comm's, Inc. v. International Broth. Of Elec. Workers, Local 103*, 324 F.3d 42 (1st Cir. 2003) ("The district court properly confined itself to a review of the panel's award and to the record before the arbitrator."); *Bath Marine Draftsmen Ass'n, Local 3999 v. Bath Iron Works Corp.*, 2007 WL 293536 (D. Me. 2007) (considering five exhibits admitted at arbitration in evaluating the plausibility of the arbitrator's contract interpretation); *Rivera v. United Parcel Services*, 2022 WL 2275535, at *2 (D.P.R. June 23, 2022) (denying plaintiff's motion to strike paragraphs from defendant's motion for summary judgment, finding no support for plaintiff's contention that "[i]n the arbitration award, the arbitrator never made any factual conclusion, notwithstanding the documentary and testimonial evidence presented by the parties during the hearing, thus, the defendant, through a dispositive motion, cannot modify the award and force the court to consider conclusions of fact that were never made by the arbitrator in the arbitration award.").

**VIII.   The Union's Request For Interest And Attorneys' Fees Is Meritless.**

While Harvard hesitates to label the Union's request for interest and attorneys' fees as

frivolous, especially given the Union's propensity to throw that word around in its Opposition, the label nonetheless fits. The Award should be vacated, and accordingly, the Union is not entitled to attorneys' fees or interest.

Regardless, "[u]nder the so-called 'American Rule,' absent an authorizing statute or contractual commitment, litigants generally bear their own costs." *Local 285, Serv. Employees Int'l Union, AFL-CIO v. Nonotuck Res. Associates, Inc.*, 64 F.3d 735, 737 (1st Cir. 1995). Attorneys' fees may, however, be imposed in the limited circumstance that the "losing party has acted in bad faith, vexatiously, or for oppressive reasons." *Id.* (internal citation and quotation omitted). "[T]he term 'vexatious' means that the losing party's actions were frivolous, unreasonable, or without foundation." *Id.* (internal citation and quotation omitted). Notwithstanding the Union's gratuitous use of the word "frivolous," the Union falls well short of the standard. *See Electronics Corp. of Am. v. International Union of Electrical Workers, Local 272*, 492 F.2d 1255, 1256 (1st Cir.1974); *Advest, Inc. v. McCarthy*, 914 F.2d 6, 8-9 (1st Cir. 1990); *North Adams Regional Hosp. v. Mass. Nurses Ass'n*, 74 F.3d 346, 348-49 (1st Cir. 1996) (upholding the denial of attorneys' fees where the challenge to an arbitral award was "not frivolous, unreasonable, or without foundation," noting that the Union's argument "comes perilously close to inappropriately asking the court to evaluate the competency of the presentation of the argument, rather than the merits of the argument itself, for the purposes of imposition of attorneys' fees.").

Further, in *North Adams Regional Hosp.*, the First Circuit further explained that in cases involving challenges to arbitral awards on public policy grounds, no attorneys' fees can be awarded if "[i]t was at least arguable that there is a public policy" that supports the plaintiff's theory of vacatur. *North Adams Regional Hosp.,* 74 F.3d at 348-49 (explaining that a rule awarding attorneys' fees to penalize a party who put forth a public policy challenge that lost on the merits

"would subvert the public interest in allowing public policy challenges at all to arbitral awards").

The Union's further request for "interest on damages" makes no sense. The Arbitrator awarded no damages; nor is she authorized to award legal damages under the CBA. She awarded unspecified make whole relief for "lost benefits and payments." Even assuming that this is what the Union meant, there is no basis to award interest on any potential backpay award. In *Burke Distrib. Corp. v. Prof'l Salemen's Union*, No. CIV.A. 84-3246-N, 1986 WL 10332, at *2 (D. Mass. Sept. 10, 1986), this Court analyzed a number of factors and determined that an award of interest on the backpay awarded by the arbitrator was inappropriate. The Court reasoned that "the Labor Management Relations Act does not specifically authorize such a payment," and "in awarding the grievant back pay in his decision, the arbitrator [] did not see fit to include any provision for interest." *Id.* The Arbitrator here did not award any interest on any backpay award.

For these reasons, Harvard respectfully requests that the Court grant its motion for summary judgment, deny the Union's cross-motion for summary judgment, vacate the Award, and grant such other and further relief as the Court deems just and proper.

DATED: January 6, 2025

Respectfully submitted,

PRESIDENT AND FELLOWS OF
HARVARD COLLEGE

By Its Attorneys,

*/s/ Abigail Skinner*
Robert A. Fisher (BBO # 643797)
rfisher@seyfarth.com
Abigail Skinner (BBO #709705)
askinner@seyfarth.com
SEYFARTH SHAW LLP
Seaport East
Two Seaport Lane, Suite 1200
Boston, Massachusetts  02210-2028
Telephone:  (617) 946-4800
Facsimile:   (617) 946-4801

## CERTIFICATE OF SERVICE

I hereby certify that on January 6, 2025, a true copy of the foregoing document was electronically filed through the Court's ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants.

*/s/ Abigail Skinner*
Abigail D. Skinner